Good morning, Your Honors. May it please the Court, I will address the issues that the Court raised in its June 13th order, but I'd like to make a few preliminary points first that I believe are related to those two issues and that will lead into those two issues. The District Court's decision was erroneous for multiple reasons, including two key errors that led to other flawed conclusions. The District Court's first and most critical error was in its analysis of the alleged harm. It narrowly focused on whether plaintiffs properly pled that Color Health already disclosed confidential information to third parties and found that it was not well pled. By limiting its focus to this narrow point, the District that disclosed the information and violated Federal and State law. Wait, sorry, could you explain that? So I thought that the employer caused the employees to go get tested, and then it would be the employees giving that testing information to the testing company. How are you saying that the employer disclosed the information? By forcing the employees to disclose this confidential information and consent to the privacy waivers through pain of discipline up to and including termination. But it's indirect, right? It comes through the employees giving the information and consenting, not really directly from the employer. That's correct, but the employees had no choice. They'd lose their job if they didn't do it. Okay, so as to that, so I think you have like two categories of things you're upset of or you want. One category is tell the employer to stop forcing the employees to do that. And then the other thing is tell the employer to tell the testing company to do various things. It seems like you're starting with the tell the employer to stop telling the employees category. And as to that category, I'm wondering why there was an imminent injury at the time you filed the suit, because they had already stopped that policy as I understand it. Well, the injury is because Color Health now retains this confidential information subject to the privacy waivers. And it basically can do what it wants with this information. Okay, so now you're jumping to the other category, tell Color to not do that. That's the other category of what you want, is have the employer tell Color various things. But I think you started with tell the employer to stop requiring the employees to do various things. Right. Well, yes, that's Remedies 1 through 4, which is declaratory injunctive relief. The defendant's position throughout testing and throughout this litigation is that it didn't do any harm, that it didn't violate the law, and that if testing were to recur, it would do the same thing again. And Remedies 1 through 4 goes to that, saying that this conduct was unlawful and that defendants should not do it again. And so they had stopped the conduct by the time you filed the suit, right? There was no mandatory testing by the time you filed the suit. Yes, it was in September 2022. And so how did you meet the imminence requirement for standing for the injunctive relief when there was nothing happening anymore? It was a concern that the defendants would restart the program. The order in September 2022 is that it was basically winding down the program. It wasn't necessarily finished completely. It didn't say all testing would stop. It said that testing would stop for certain situations. So it left open the question. You're asking this Court to issue an advisory opinion, essentially, about some possible future harm that might occur to your clients. With respect to Remedies 1 through 4, yes, but not Remedies 5 through 9. Okay. So with respect to Remedies 1 through 4, you're asking this Court for an advisory opinion for some future action that might occur. And for the latter remedies, you're asking for an order that would require the defendant to tell Culler not to release the information of your clients. Is that correct? Yes, to destroy the information or return it. Do they have control over Culler? The defendants have bargaining power as an arm of the State to enter an agreement with Culler Health. What I'm struggling to understand is how a court order that addresses the injury of Culler's future disclosure or the retention of that data can be made effective by an order to the defendant. An order would force the defendants to use all best efforts to get Culler Health to return and destroy that information. How is that order enforceable? The court could supervise the defendants to make sure that they're actually reaching out to Culler Health and trying through their bargaining power as an arm of the State to enter an agreement with Culler Health. But so there are many cases that talk about redressability in third parties and say that if the defendant doesn't have control over the third party, that kind of interaction, there's no redressability, including we just got a 28-J letter about the recent Supreme Court case Murthy v. Missouri. So can you address how you think you can get around Murthy on this redressability problem for those parts of your claim? Well, Murthy is distinguishable for multiple reasons. First, that case was out of the pleading stages. Extensive discovery occurred. And the plaintiffs still could not show that defendants engaged in unlawful conduct. That's not the part of it I'm talking about. I'm talking about the redressability part where the court says there's no — the defendants have no control over the third parties who would do these various things. And so telling the defendants to stop asking those third parties to do things has no effect on whether the third parties continue to do them or not. And here, you can have your defendants ask Culler, but it has no control over whether Culler continues to do anything — something or not. Well, it was my understanding of the Murthy decision that the Supreme Court ultimately found that the government was not the cause of the censorship. And then they go on to say, and even if they were, there's no redressability because this is a third-party problem. Except in this case, the State is in contract with Culler Health. And those contracts are still in existence. And as an arm of the State, defendants can use its bargaining power to get a contracting party of the State to follow through with those remedies. And remind me again why Culler wasn't brought into this. Because the main violation of law occurred because of the defendants, the defendants' behavior of forcing these employees to give up their rights. But if there's no control — I'm sorry? If there's no control, why? I mean, you have no claims against Culler, correct? I mean, Culler is an entity that collects data. When it provides this testing, it retains the data and it disseminates it. That's something that it does as part of its business, correct? That's correct. So your clients have no claims against Culler. That's why Culler wasn't brought in. But now you're asking for an order from the Court that somehow requires Culler to take action that nobody can actually enforce them to do. Well, we're asking the Court to order the defendants to use its efforts to get Culler Health to carry out those actions. And can you cite any authority in which a court has ordered a defendant to then somehow require a separate third party over which it has no control to comply with that order? No, Your Honor. Do you want to reserve the remaining time? Yes. Thank you. Good morning, Your Honors, and may it please the Court, Deputy Attorney General Paloma Carreiro for defendants and appellees. As the Court has emphasized, there are two key issues here. Whether there's an imminent injury that can be redressable via the suit. The answer to both of those questions is no. There is no imminent injury because, as the Court pointed out, the testing program has ended. The waiver occurred in the past. The testing program, even though COVID is ongoing, has not been brought back. What about their argument that, well, they can bring him back in the future? What about that argument? There's no indication that there is a valid contract between the California Department of Public Health and Color for the provision of future services. There's no indication that even if we brought back testing, even with Color, that those same policies that they find objectionable would still be applicable in this case. But you would agree that if at some future time that policy was reinstated and the things that the plaintiffs are complaining about were to reoccur, they would have the opportunity to bring a challenge at that time, right? I would say that the policy we had in place at that time was very specific in context,  It was the state responding to emergency situation of trying to find a vendor to make sure that we're testing these first responders that are coming into contact with the public and we can get them tested and protect them and the public. Those same circumstances are not at play here now. We have different ways by which we can handle COVID. Now you can just walk into your CVS, get a test. That's right. I don't disagree with you. I guess what I'm saying is I think your friend on the other side agreed that they're essentially seeking an advisory opinion from this court with respect to a policy that's no longer in effect, but they fear that it might come into effect at some point in the  And if that were to happen, that would be a different case. That's not this case. That's not us issuing an advisory opinion. But there would be an opportunity for the plaintiffs to challenge whatever future policy, even if it's the same one, that were to come into effect in the future. Right? Potentially, it would depend on the set of circumstances. I believe it would depend on what exposure or what harm they're claiming occurred from their participation in some future undisclosed testing program. That I don't think would apply in this case. And without further context, I can't say now that they would have standing. Then they don't have standing now. We know that. Because again, the waiver happened in the past. No one's asking them to sign that waiver once again. And so they have no present injury. And in terms of the second set of relief that they seek, which is tell color not to do this, as the court pointed out, that's not redressable via this suit. And that's because even if we tell color, pretty please, sugar on top, don't do this, that doesn't mean color is obligated to do what we tell it to do. And it's important to note here that my friend on the other side points out that maybe CAL FIRE and CalHR have some sort of bargaining contracting power. The contract was not between CAL FIRE, CalHR, and color. The contract was with CDPH. CDPH is not a party to this action. There's nothing that CAL FIRE, CalHR, and the state officials can do to try to somehow leverage an action from a third-party vendor. There's no state mechanism that allows us to just come in and say, don't do that. And even if we... So let's just hypothesize that CDPH gets added or is a defendant. Could they do something? Or do you think they couldn't do anything to get color to do this either? I also think they couldn't do anything to have color do this. And that's because there's no mechanism by which, under state law, the state can mandate a third-party vendor to take any particular action. And my friend on the other side makes much of, well, they have a contract. Again, there is no current contract because we've not had a test for COVID-19 since the program ended in September of 2022. So there is no means by which there's a stick for us to ensure that color can do anything. And unless the court has any further questions for me, I will conclude and respectfully request that this court affirm the district court's order dismissing this action without leave to amend, Your Honors. Thank you. Thank you. We have some time for rebuttal. Thank you, Your Honors. The color-held contracts are still in effect. The complaint alleges so. And the defendants have not alleged that they have been terminated. So these policies are still ongoing. Do you have any reason to think that any work is being done under them, though? They're making any money on this contract at this point? Well, we have not engaged in any discovery, so we're unsure. At this stage of litigation, we don't know. And, you know, the defendants say that the waiver occurred in the past, but the harm is ongoing. Color Health retains this information, subject to the privacy waivers, has carte blanche to use this information. And precedent from this court shows that retention of private information, especially medical information, and here we're talking about medical status of the employees, their family members, vaccination status. Precedent from this court shows that private information being retained is an ongoing harm and warrants prospective relief. And you can find that in Norman Bloodstaff v. Lawrence Berkeley Laboratory, Mayfield v. U.S., both precedent from this court. Neither of those involve the third party, though, right? That is correct, Your Honor. And the defendants had the power to change the testing program all along. The complaint alleges that it allowed an employee to test with another vendor. Didn't even use the same COVID test. COVID test used by Color Health was a nasal swab. In that case, it was a saliva test through a different vendor. That shows that defendants could have changed the testing program. It did not have to go according to the Color Health contracts. It did not need to use Color Health. And that's alleged in the complaint. Thank you, Your Honors. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MENDOZA, DESAI